UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

NAS SURETY GROUP,

      Plaintiff/Counter-Defendant,

Case No. 1:06-CV-818

v.

Hon. Richard Alan Enslen

COOPER INSURANCE CENTER,
INC.,

      Defendant,
and

MARK COOPER,

**OPINION**

      Defendant/Counter-Plaintiff.
_____/

This matter is before the Court on cross-motions of the parties for summary judgment. Upon review of the briefing, the Court determines that oral argument is unnecessary and would unduly protract these proceedings. *See* W.D. Mich. L. Civ. R. 7.2(d).

**FACTUAL BACKGROUND**

This diversity suit was filed on November 16, 2006 by Plaintiff NAS Surety Group (a New Hampshire corporation with its principal place of business there) against Defendants Cooper Insurance Center, Inc. ("CIC") and Mark Cooper (being Michigan citizens and residents). (*See* Compl. ¶¶ 1-5; 28 U.S.C. § 1332.)  The Complaint is stated in seven counts alleging, respectively: 1. Specific Performance (forwarding of books and records); 2. Specific Performance (return of property); 3. Breach of Contract–Failure to Pay Premiums; 4. Breach of Fiduciary Duty; 5.

Fraud–Piercing the Corporate Veil; 6. Fraud–Alter Ego; and 7. Conversion under Mich. Comp. Laws § 600.2919a.

Defendants answered the Complaint disputing such claims on December 20, 2006. Defendant Cooper, through counsel, then sought leave, which was granted, for the filing of a Counter-Claim against Plaintiff for libel *per se*. The filing of the Counter-Claim was allowed by Order of March 1, 2007 and the Counter-Claim was filed the same day. Defendant Cooper's Counter-Claim alleges that the statements in Counts Five through Seven of the Complaint, including allegations of fraud and theft, were false and defamatory *per se* and that he was further defamed when Plaintiff transmitted a copy of the Complaint with a formal administrative complaint to the Office of Financial and Insurance Services of the State of Michigan. (Counter-Claim ¶ 3; Cross-Mot. for Summ. J. ¶ 2.)

Defendants brought the first of the competing summary judgment motions on July 31, 2007, seeking summary judgment as to Counts 5 through 7 of the Complaint. Plaintiff's September 13, 2007 Cross-Motion for Summary Judgment seeks dismissal of the Counter-Claim on the ground that the statements at issue are privileged.

A review of the factual record shows very paltry factual support for the allegations made in Counts 5 through 7. It is admitted by all parties that Plaintiff and CIC were parties to a Surety Agency Agreement executed on April 27, 2004. (Compl., Ex. A.) The Agreement authorized CIC to receive premiums for the issuance of surety bonds to be issued by Plaintiff; it further authorized CIC to counter-sign such bonds and collect such premium payments for remission to Plaintiff. (Agreement § 1.C-E.) In exchange, the Agreement promised CIC commission payments on the

bonds. (*Id*. at § VI.) The accounting of these business arrangements was to be managed by a monthly account statement by CIC and/or a contrary statement of account by Plaintiff. (*Id*. at § 1.H.)

At some point, the payment of bond premiums by CIC was disputed by Plaintiff. Plaintiff has submitted the Affidavit of Kay Hull, which states that CIC owes Plaintiff $252,982.18 as of June 1, 2007 for unpaid bond premiums. (Hull Aff. ¶ 5.) Due to such deficiencies, CIC and Plaintiff terminated the Agreement effective October 18, 2006. (*Id.* ¶ 7.) Hull's Affidavit is conspicuously silent as to fraud, theft of property or the operation of CIC as an instrumentality of Mark Cooper. The only evidence regarding the "alter ego"/"instrumentality" allegations offered by Plaintiff is the Affidavit of Sherry Witt.

Ms. Witt was a former Office Manager for CIC who worked for four or five months during the summer of 2004. (Witt Aff. ¶¶ 2-3.) In that capacity, she deposited funds into CIC's corporate account as well as a "premium account" which was used for direct payment of insurance and bond premiums to the issuing companies. (*Id.* at ¶¶ 4-6.) According to Ms. Witt, Mark Cooper ignored statements from Plaintiff regarding unpaid premiums and she "does not recall" directing payments to Plaintiff.[1] (*Id.* at ¶¶ 7-9.) Ms. Witt also says that she would pay personal/household expenses for Mark Cooper from CIC's general corporate account. (*Id.* at ¶ 10.) Ms. Witt states that Mr. Cooper would make transfers into the corporate account to fund payments, including payroll. (*Id.* at ¶ 13.) Ms. Witt disavows knowledge of the source of the funds transferred, but speculates that "the Premium Account was the only other CIC bank account of which I was aware." (*Id.* at ¶ 14.)

---

[1]While Witt has said so, she has not claimed to know the whole account history with Plaintiff, and other evidence shows that some premium payments were submitted by CIC to Plaintiff, including by Ms. Witt. (*See* Counter-Claim Opp'n Br., Exs. A & B.)

Plaintiff admits in its Cross-Motion for Summary Judgment that it provided a copy of the Complaint to Michigan's Office of Financial and Insurance Services. (Cross-Mot. ¶ 2.) Plaintiff argues that the transmission of the Complaint to the Office and its earlier filing were privileged.

**SUMMARY JUDGMENT STANDARDS**

The cross-motions are brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

For a diversity suit, the Court must "apply state law in accordance with the then controlling decision of the highest state court" of the forum state. *Bailey Farms, Inc. v. NOR-AM Chem. Co.,* 27 F.3d 188, 191 (6th Cir. 1994); *see also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). When a state supreme court has not addressed the issue, the Court must ascertain how that court would rule if it were faced with the issue. *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940). The Court may use the decisional law of the state's lower courts, state supreme court *dicta*, decisions of other federal courts construing state law, restatements of the law, law review commentaries, and decisions of other jurisdictions constituting a "majority" rule in making this determination. *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir. 1995); *Grantham & Mann v. American Safety Prods.*, 831 F.2d 596, 608 (6th Cir. 1987). A federal court should ordinarily follow the decisions of intermediate appellate state courts unless other persuasive data shows that the state supreme court would do otherwise. *West*, *supra*.

    1.  **Counts 5-6 of the Complaint**

To begin, Counts 5 and 6 of the Complaint allege fraud on the part of CIC and further allege that Defendant Mark Cooper should be liable for such fraud because CIC was operated as a mere "alter ego" of Mark Cooper.

Under Michigan law, a claim of fraudulent misrepresentation is proven by showing: defendant made a representation of a material fact; the representation was false when made; the false misrepresentation was made knowingly or recklessly; the misrepresentation was made with an intent that plaintiff rely upon it; that plaintiff relied upon the misrepresentation; and plaintiff was damaged as a consequence of its reliance. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816

5

(Mich. 1976); *Novak v. Nationwide Mut. Ins. Co.,* 599 N.W.2d 546, 553 (Mich. Ct. App. 1999); *M&D, Inc. v. W. B. McConkey,* 585 N.W.2d 33, 36 (Mich. Ct. App. 1998).

Michigan law also recognizes a claim for fraud based on a bad-faith promise. To prove that claim, a claimant must show: defendant made a specific promise to plaintiff; at the time of the promise, defendant did not intend to keep it; defendant made the promise with the intent that plaintiff rely upon it; plaintiff relied upon it; and plaintiff was damaged as a result of its reliance. 2 Mich. M. Civ. J.I. 128.03 (I.C.L.E. 2006); *Hi-Way Motor Co.*, 247 N.W.2d at 817. However, the Michigan Supreme Court has rejected application of the doctrine to commercial parties except when the evidence of fraudulent intent relates to the time the false promise was made or immediately thereafter. *Hi-Way Motor Co.*, 247 N.W.2d at 817.

Michigan law further requires that fraud claims be proven by "clear, satisfactory and convincing evidence." *Id.* at 816; *Disner v. Westinghouse Elec. Corp.*, 726 F.2d 1106, 1109-10 (6th Cir. 1984). This higher standard of proof reflects a concern about the relative importance of the ultimate decision and the "risk of error" in assessing fraud. *Disner*, 726 F.2d at 1110.

Regarding Counts 5 and 6 of the Complaint, the first observation to be made is that the vague allegations do not meet the pleading requirements for fraud. Under Fed. R. Civ. P. 9(b):

> In averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

This requirement has been interpreted to mean that a complaint must give the time, circumstances and content of the false statements which are alleged to be fraudulent. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, – F.3d –, 2007 WL 2492439, *8 (6th Cir. 2007) (citing cases); *see also Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 851-52 (6th Cir.

2007) (holding that mere allegations of a fraudulent motive are insufficient to meet pleading requirements, and citing *Fidel v. Farley,* 392 F.3d 220, 232 (6th Cir. 2004) and *In re Comshare,* 183 F.3d 542, 551 (6th Cir. 1999)).

In this case, the allegations of the Complaint fail to meet the requirements of Rule 9(b) because the date, time, circumstances and contents of false statements are not alleged. Assuming that the allegations of the Complaint refer to the promise to remit premium payments and that Plaintiff is alleging the promise to have been made in bad faith, *see* Compl. ¶¶ 33-36 (discussing unpaid bond premiums), the allegations of the Complaint are nevertheless insufficient because there is an absence of circumstances alleged from which one could conclude that CIC did not intend to pay the bond premiums at the time of the Agreement.

Further, removing this dispute from the Rule 9(b) context, Rule 56 now requires Plaintiff to support allegations of fraud with evidence of the same. The instant record shows at best that CIC failed to promptly pay all of the bond premiums owed to Plaintiff, though it did pay some premiums. This kind of evidence fails to present sufficient evidence which would support a jury inference that CIC did not intend to pay the bond premiums at the time of the Agreement. As such, summary judgment is warranted on the fraud claims.[2]

### 2. Count 7 of the Complaint

Count 7 of the Complaint asserts a claim of conversion under Mich. Comp. Laws § 600.2919a. This statute applies only when the defendant has "actual knowledge" that the subject

---

[2]The failure of the fraud claims renders moot the question of whether Cooper used CIC as an "alter ego" or "mere instrumentality," although the record, such as it is, does not support that inference either.

property has been stolen, embezzled or controverted. *Echelon Homes, L.L.C. v. Carter Lumber Co.*, 694 N.W.2d 544, 549 (Mich. 2005).

In this case, Plaintiff attempts to show that Mark Cooper converted premium payments for his personal use through the affidavit of Sherry Witt. However, Witt's Affidavit only speculates as to the source of funds used to pay personal expenses from the CIC general corporate account, and specifically fails to show that premium funds were used to pay Cooper's personal expenses. Likewise, the Surety Agreement expressly required CIC to allocate premium funds and commission funds; neither Witt's Affidavit nor any other evidence submitted support an inference that Cooper/CIC knew that Cooper/CIC's retention or transfer of funds was a wrongful exercise of dominion over Plaintiff's property.

Therefore, summary judgment is proper as to Count 7.

### 3. Counter-Claim

Cooper's Counter-Claim is based wholly on the dismissed counts of the Complaint, Counts 5 through 7, and the allegations that Cooper used CIC as an alter-ego to commit fraud, and embezzled Plaintiff's premium payments. (Counter-Claim ¶ 2.) Cooper alleges that both the publication of the Complaint to the Court and the repetition of the Complaint to the Office of Financial and Insurance Services constitute actionable libel. (Counter-Claim ¶¶ 2-3.) While Plaintiff maintains in its Cross-Motion for Summary Judgment that the publication of such information was privileged, Cooper argues that privilege does not apply because libel is irrelevant to the subject matter of the suit. (Br. in Opp. 11, citing *Oesterle v. Wallace*, 725 N.W.2d 470 (Mich. Ct. App. 2006) and *Neshoud v. Salem*, 173 F.3d 357 (6th Cir. 1999).)

Cooper's argument fails to appreciate the breadth of the privilege protection as delineated by the Michigan Supreme Court in *Sanders v. Leeson Air Conditioning Corp.*:

> In dismissing the libel action with prejudice, Hon. Horace W. Gilmore, circuit judge for Wayne county, stated:
>
>> The general rule in Michigan seems to have been stated succinctly and well in *Hartung v. Shaw*, 130 Mich. 177 [89 N.W. 701].  There the Court said, *inter alia*:
>>
>>> If statements made in the course of judicial proceedings, in pleadings or in argument, are relevant, material, or pertinent to the issue, their falsity or the malice of their author is not open to inquiry. They are then absolutely privileged. * * * It is only necessary that the language be pertinent, or as some authors say, relevant.
>>
>> In determining what is pertinent, much latitude must be allowed to the judgment and discretion of those who are intrusted with the conduct of a cause in court, and a much larger allowance made for the ardent and excited feelings with which a party, or counsel, who naturally and almost necessarily identifies himself with his client, may become animated[.]
>>
>> It has further been held as a matter of public policy that the privilege in this instance should be liberally construed so that participants in judicial proceedings may have relative freedom to express themselves without fear of retaliation.  Such policy in the opinion of the court makes good sense and a presumption in favor of the relevancy of the statement arises.
>>
>> In the light of this presumption, we consider the question of whether the language, "that the said Edward Sanders, Ida Sanders, and R. M. Hagelberg are in fact committing a crime * * *", is relevant, material, or pertinent to the issue.
>
> We agree with the trial court, and hold that no reversible error was committed by dismissing the libel action with prejudice.

108 N.W.2d 761, 762-63 (Mich. 1961).

This statement of law is still followed in much more recent decisions of the Michigan Supreme Court.  *See Maiden v. Rozwood*, 597 N.W.2d 817, 830 (Mich. 1999) (following *Sanders*).  Indeed, the Michigan Supreme Court has held: "Falsity or malice on the part of the witness does not

abrogate the privilege . . . . The privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation." *Id.*

Given the liberal construction of the privilege, it is clear that the malicious allegations of Counts 5 through 7 are pertinent to the allegations of those Counts and are protected by the absolute privilege for judicial filings.

A separate question is whether the absolute privilege extends not only to court filings, but also to administrative complaints filed with the Office of Financial and Insurance Services ("OFIS"). OFIS was reorganized by administrative order of the Governor in 2000. *See* Mich. Comp. Laws § 445.2003. OFIS, since 2003, has operated within the Michigan Department of Labor and Economic Growth. *See* Mich. Comp. Laws § 445.2011. OFIS is tasked with, among other things, the regulation of the insurance and surety industry. *See* Mich. Comp. Laws § 445.2003; Mich. Comp. Laws §§ 500.200 *et seq.*

Plaintiff argues in its Brief in Support of Cross-Motion for Summary Judgment that the absolute judicial privilege attaching to complaints extends to complaints filed with any administrative board that performs a judicial function. (Br. in Supp. 15, citing *Oesterle*, 725 N.W.2d at 474.) Cooper does not expressly address this point in his Brief in Opposition. Nevertheless, the extension of the privilege to administrative bodies is an essential component of Plaintiff's argument that the defamation counter-claim should be dismissed. This is also a significant point of law since no citation has been given to any legal authority which treats a complaint to OFIS as subject to the absolute judicial privilege.

The *Oesterle* decision cited by Plaintiff, aside from its *dicta*, is not directly on point because its holding related to statements made in a judicial settlement conference rather than during

administrative hearings. However, the *Oesterle* decision did cite with approval the decision of the Michigan Court of Appeals in *Couch v. Schultz*, 483 N.W.2d 684, 686 (Mich. Ct. App. 1992). The *Couch* court held that statements made in the course of a prison disciplinary hearing before an administrative law judge were subject to the absolute judicial privilege if relevant. *Id.* In making this determination, the *Couch* court determined that the similarity of the administrative judicial hearing to ordinary judicial hearings and the right of judicial review of the administrative decision together warranted a determination that absolute judicial immunity attached to relevant testimony of witnesses. *Id.*

Compare that situation to the administrative review of insurance decisions by OFIS. The insurance laws permit the OFIS Commissioner to revoke an insurance license based upon wrongful conduct of the licensee, including the use of inaccurate accounting methods regarding fiduciary funds and the misappropriation of monies received in the course of insurance business. Mich. Comp. Laws §§ 500.1207(2), 500.1239(1)(d).[3] Such licensing decisions, as well as other corrective actions, are determined after contested evidentiary hearings which are conducted under the terms of Michigan's Administrative Procedures Act of 1969 ("APA"), Mich. Comp. Laws §§ 24.201 to 24.328. Mich. Comp. Laws § 500.1239(2)-(5). Under Michigan's APA, the licensing decisions are typically made by an Administrative Law Judge subject to final decision by the Commissioner of OFIS. *See* Mich. Comp. Laws §§ 24.281 - 24.285, 24.292. Such final decisions are subject to appeal and judicial review of the official record of proceedings. *See* Mich. Comp. Laws §§ 24.286, 24.301- 24.305.

---

[3]According to correspondence from OFIS, Plaintiff's Complaint has generated an investigation regarding a possible violation of Mich. Comp. Laws § 500.1207(2). (Cross-Mot. Reply, Ex. A).

Given the provisions of Michigan's APA for determination of a contested OFIS hearing and judicial review of the same, the conclusion readily follows that the hearing process for OFIS complaints should be subject to the same privilege protections determined in *Couch*. *See also Shelly v. Johnson,* 849 F.2d 228, 230 (6th Cir. 1988); *Martin v. Children's Aid Society*, 544 N.W.2d 651, 656 (Mich. Ct. App. 1996); MCR 9.125.  The Court, therefore, finds that Plaintiff's complaints to OFIS were protected by an absolute judicial privilege to report suspect misconduct of licensed insurance agents.  It follows that the Counter-Claim must be dismissed, in its entirety, with prejudice.[4]

## CONCLUSION

Accordingly, a Partial Judgment shall enter granting both motions for partial summary judgment.  Such Partial Judgment shall dismiss with prejudice Counts 5-7 of the Complaint and the whole of the Counter-Claim.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>November 8, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[4] It is possible to read the Counter-Claim as requesting sanctions pursuant to Federal Rule of Civil Procedure 11.  In this context, it is noted that the procedure required by Rule 11(c)(1)(A) has not been followed.  While the Court retains discretion to sanction Rule 11 violations all the same, *see* Rule 11(c)(1)(B), the only sanction appropriate in this case is the following observation which is pertinent to attorneys of both sides.  The conduct of this litigation, and particularly the dismissed claims, demonstrates a "shoot first, and ask questions later" mentality that is unbecoming of counsel and not conducive to the goals of Rule 11.  Next time, make sure the law and facts support your allegations, before you litter your pleadings with them.